AURIN Z. LITTLEFIELD & *al. versus* NATHAN WINSLOW.

Where the defendant had given a bond to convey a tenth of a certain tract of land to the plaintiffs, on certain conditions, and the plaintiffs had agreed to build a dam on said tract, "and that all moneys expended by them for said W. the defendant, are to go towards payment for their tenth of the within named township," and the plaintiffs had not complied with the conditions of their bond, they were not permitted to recover for building the dam.

The term "moneys expended," &c. does not embrace claims for services performed, or moneys expended prior to the date of the agreement in which it is used.

In the construction of contracts, the language used must be limited by the subject matter of the contract.

THIS was an action of assumpsit for services performed and moneys expended in building a dam, one third part of which the plaintiffs claimed to recover; also, for their services in exploring a township of land belonging to the defendant, at his request.

It was agreed, that the plaintiffs could prove that they had performed the services and expended the moneys set forth in their exhibits; but the defendant contested their right to recover of him therefor.

The plaintiffs introduced the following agreement:

"Portland, June 30, 1835.

"This may certify, that I agree to pay one third of the expenses of damming and improving the head of the Austin stream, provided it be done in the best and most permanent manner during my owning the Bald Mountain township. And further agree, if I sell, to take an obligation from the purchasers to do the same. NATHAN WINSLOW."

"To Littlefield & Kerswell."

The dam was built upon a part of this township. The plaintiffs were to have the privilege of being interested in the Bald Mountain township, to the amount of one tenth, at two dollars per acre. The plaintiffs had no legal title to the land, but their right was secured by a bond, dated March 7, 1835, executed by the defendant and Isaac Winslow, which upon its expiration was renewed March 4, 1836, and an extension given.

It did not appear that the plaintiffs had executed any instrument to the defendant, whereby they had obligated themselves to complete the purchase of this land by fulfilling the conditions of the bond.

The defendant introduced the following paper, signed by the plaintiffs:

"Boston, June 24, 1835.

"Mr. Nathan Winslow: You are hereby authorized to sell our interest in the Bald Mountain township, being one tenth, (which you bonded us,) at such price as you sell your part for, and we will be at our part of the expenses attending the same, and allow you what is customary for selling.

"LITTLEFIELD & KERSWELL."

On the back of which was the following writing:

"Portland, June 30, 1835.

"Littlefield & Kerswell are to build a dam to flow Austin pond four feet, and all moneys expended by them for said Winslow is to go towards payment for their tenth, &c. &c.; and it is understood that the land is not to be sold for less than five dollars per acre, on usual credit.

"LITTLEFIELD & KERSWELL."

Upon this evidence, WESTON C. J. before whom the cause was tried, instructed the jury that the services and expenditures upon the dam, were, by their agreement, to go in part payment of one tenth of the land, and that they could not therefore maintain their action against the defendant to recover the same in money.

The counsel for the defendant insisted, that the agreement afforded the same defence to their services and expenditures in exploring the township; but the presiding Judge ruled otherwise, and for this part of their claim the jury returned a verdict in their favor. The jury found that the dam was not built according to contract, and that it was worth $1500.

*Tenney*, for the defendant, argued, that the memorandum of June 30, 1835, constituted a full defence to the suit. There was to be no liability for making the dam, except in part fulfil-

ment of the bond. *Johnson* v. *Read & al.* 9 Mass. R. 78;
*Cook* v. *Jennings,* 7 D. & E. 381; *Cutler* v. *Powell,* 6 D.
& E. 328; *Carling* v. *Long,* 1 B. & P. 637; *Appleton* v.
*Crowninshield,* 3 Mass. R. 443; *Gray* v. *Blanchard,* 8 Pick.
284; *M'Gaunter* v. *Wilbur,* 1 Cow. 257; *Green* v. *Reynolds,*
2 Johns. 207; *Gazley* v. *Price,* 16 Johns. 267; *Cunningham*
v. *Price,* 10 Johns. 213.

The promise being conditional, the plaintiffs cannot recover,
unless they show a performance on their part. *Faxon* v. *Mans-
field,* 2 Mass. R. 147; *Hayward* v. *Leonard,* 7 Pick. 181;
*Hill* v. *Milburn,* 5 Shep. 316; *Norris* v. *Windsor,* 3 Fairf.
393. If the plaintiffs are entitled to recover, they are to be
paid in land and not money. The several agreements are to
be taken together. *Makepeace* v. *Harv. College,* 10 Pick. 30;
*Sibley* v. *Holden,* 10 Pick. 250. The memorandum of June
30 is a defence likewise to the other claims. All was to be
paid for in land. It refers to " all moneys, &c." and embraces
all claimed. In the construction of contracts, the situation of
parties, and the subject matter of the contract, are to be taken
into consideration. *Sumner* v. *Williams,* 8 Mass. R. 214;
*Fowle* v. *Bigelow,* 10 Mass. R. 379; *Hopkins* v. *Young,* 11
Mass. R. 302; *Wilson* v. *Troup,* 2 Cow. 195; Com. on Con-
tracts, 25.

*Wells,* for the plaintiffs, insisted, that the agreement of the
plaintiffs could not refer to the claim for exploring land, for that
was past. " All moneys expended," means moneys to be ex-
pended. This phrase refers to past or future expenditures,
not both. As it was uncertain whether the plaintiffs would
take the land, the true construction of the agreement is, that
if taken, then the labor, &c. on the dam was to be accounted
for in part payment of the land. By renewing the bond, the
former contract is at an end; the defendant remaining debtor
for the dam.

The opinion of the Court was delivered by

SHEPLEY J. — The two contracts bearing the same date on
the thirtieth day of June, 1835, should be considered together.

They provide in substance, that the plaintiffs should build a dam, in the best and most permanent manner on the Bald Mountain township, to flow the Austin pond four feet, and that the defendant should pay one third part of the expense by allowing it in part payment, for one tenth of the township which he and Isaac Winslow had contracted to sell to them. The plaintiffs contend, that they are entitled to recover the amount thus expended for the defendant, notwithstanding the clause, " and all moneys expended by them for said Winslow are to go towards payment for their tenth of the within named township." The effect of such a construction would be to annex a condition, that the money expended should be so applied, provided they concluded to make the payments and become the purchasers. It appears by the restriction, which the plaintiffs placed upon their license to the defendant to sell their interest at not less than five dollars per acre, that they could not have doubted at that time, that they should make the payments by a sale of their interest or otherwise. They speak of it as " their tenth part, " shewing that they had decided to become the purchasers. And the defendant evidently designed to protect himself against a payment in cash. From an examination of all the papers as well as from the express language of that clause, the intention of both parties is apparent, that the money expended for the defendant in building the dam should be applied to pay in part for their tenth of the land. The memorandum made on the fourth of March following to prolong the time for six months, during which the plaintiffs might make the payments and obtain a title, cannot be considered as a waiver by the defendant of any other right.

The defendant on the contrary contends, that the same clause protects him from the payment in any other manner of other claims, which the plaintiffs may have against him for services or expenses not connected with the building of the dam. And that the parties intended, that the words "all moneys expended by them for said Winslow," should include all moneys expended for all purposes, as well before as afterward. Per-

sons often use general language when speaking of the subject on which the mind is then employed. If another subject be presented to the mind in connexion with it, the language usually gives some indications of it. And when it does not, if general language were not limited to the subject then under consideration, it would occasion mischiefs not only in the common business of life, but in the construction of contracts, and even in judicial proceedings. It was so clearly perceived that the language used should be considered as applicable to the subject of thought only, that it introduced the maxim, *sensus verborum ex causa dicentis accipiendus est, et secundum subjectam materiam.* There is nothing which indicates that services and expenses incurred in exploring the land were the subject of conversation or of thought at that time; and the language must be limited by the subject matter of the contract.

*Judgment on the verdict.*